IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  06-cv-00590-EWN-MEH

MERCIDITA GARCIA, *et al.*,

    Plaintiffs,

vs.

CORINTHIAN COLLEGES, INC.,
a Delaware Corporation,

    Defendant.

---

**RECOMMENDATION ON DEFENDANT'S
MOTION TO COMPEL ARBITRATION**

---

    Defendant has filed a Motion to Compel Arbitration [Docket #18], which has been referred to this Court by the District Judge [Docket #19].  Plaintiff responded by filing a "Counter Motion to Stay Proceedings" [Docket #26], which has also been referred to this Court by the District Judge [Docket #28].  These Motions are briefed, and oral argument would not materially assist the Court in its adjudication.  For the reasons set forth below, the Court recommends that Defendant's Motion be **granted** and Plaintiff's Counter Motion be **denied**.

    Be advised that all parties shall have ten (10) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  FED. R. CIV. P. 72.  The party filing objections must specifically identify those findings or recommendations to which the objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo*

determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

**I.   Facts**

Plaintiffs are prospective students who enrolled at Parks College (operated by Defendant). Each signed an Enrollment Agreement. The Enrollment Agreement is a white, two-page, bi-folded, 8½ x 11-inch form with canary and pink carbon copies underneath. The reverse side of all pages contains detailed information about the Enrollment Agreement, including a great deal of information concerning (1) student's rights under Colorado law; (2) disclaimers by Park College regarding, for example, no guarantee of employment following graduation, discontinuance of the student's education upon unsatisfactory progress or failure to abide by the College's rules, potential changes in instructors/textbooks/course curricula/ schedules/etc.; (3) refund and cancellation policies; and (4) an agreement for binding arbitration.

Regarding the agreement for binding arbitration, on the front side of the application, the Enrollment Agreement has the following provision (punctuation, approximate size, and emphasis in original)[1]:

---

[1]The original had approximately ½-inch margins on the right and left.

***Acknowledgment of Waiver of Jury Trial and Availability of AAA Rules***
*(See Agreement to Binding Arbitration and Waiver of Jury Trial on reverse side.)*
By my signature below, I acknowledge that I understand that both I and Parks College are irrevocably waiving rights to a trial by jury, and are selecting instead to submit any and all claims to the decision of an arbitrator instead of a court.  I understand that the award of the arbitrator will be binding, and not merely advisory.  I also acknowledge that I may at any time, before or after my admission, obtain a copy of the Rules of the American Arbitration Association, at no cost, from the Parks College President.

_____       _____      _____      _____
Student Signature`                           Date                       Admissions Representative Signature               Date

**(Subject to the terms and conditions of reverse side)**

**White -** Academic File        **Canary** - Financial Aid        **Pink** - Student

Defendant has provided documentation that each of the Plaintiffs signed this provision.[2] On the reverse side of *every* page (white, canary and pink) was the detailed information noted above. The arbitration provision on the reverse side of every page was titled (in bold) as follows (approximate size in original):

**AGREEMENT TO BINDING ARBITRATION AND WAIVER OF JURY TRIAL**

The terms of the arbitration agreement provided that "[t]he student agrees that any dispute arising from my enrollment at Parks College, no matter how described, pleaded or styled, shall be resolved by binding arbitration under the Federal Arbitration Act . . . ."  It also stated that neither the student nor Parks College "shall file or maintain any lawsuit in any court against the other, and agree that any suit filed in violation of this Agreement shall be dismissed by the court in favor of an arbitration conducted pursuant to this Agreement."

Plaintiffs do not deny signing the "Acknowledgment of Waiver of Jury Trial and Availability

---

[2] This provision was below a separate signature line by which the prospective students agreed to all the other terms of the Enrollment Agreement.

of AAA Rules," nor could they credibly do so, unless they were claiming that their signatures which appear on Defendant's exhibits were forged. They simply argue that prior to the *execution* of the Acknowledgment, they were not aware of its existence, language, or terms. They contend that they listened to a "high-pressure sales pitch," then filled out a vast number of forms. They allege that this entire procedure was "rushed." They also contend that the sales pitch contained misrepresentations concerning accreditation, credit transfers, and job and salary statistics although, surprisingly, no misrepresentations concerning arbitration (only omissions). As to the "reverse side," Plaintiffs allege that the students were never specifically, orally directed to it. Plaintiffs allege that the Enrollment Agreement is physically constructed so that a reasonable person would not know that there is printing on the reverse side. The contents of the reverse side are revealed when the Enrollment Agreement is opened in a book-like or folder-like fashion, *i.e.*, the Enrollment Agreement is essentially an 8 ½ x 22 inch collection of three pages that is folded in half, with the exposed page being the white pages that are filled in and signed, the middle page being a canary carbon copy, and the last page being a pink carbon copy. Each of the three pages has, on its back side, the identical, detailed information concerning disclaimers, refunds, and arbitration. It is evident from looking at the top, white page that there is detailed information on its back side.

**II.     Discussion**

      **A.     Governing Law**

Under the Federal Arbitration Act (FAA), 9 U.S.C. § 3, a district court *must* stay or dismiss judicial proceedings when a written agreement provides that the subject of the litigation must be submitted to arbitration. "'There is a strong federal policy favoring arbitration for dispute resolution.'" *Coors Brewing Co. v. Molson Breweries,* 51 F.3d 1511, 1514 (10th Cir. 1995) (quoting

*Peterson v. Shearson/American Express, Inc.,* 849 F.2d 464, 465 (10th Cir. 1988)). If there is uncertainty as to whether a claim is arbitrable, "[a]ll 'doubts are to be resolved in favor of arbitrability.'" *Id.* (quoting *Oil, Chem., & Atomic Workers Int'l Union, Local 2-124 v. American Oil Co.,* 528 F.2d 252, 254 (10th Cir. 1976)).[3]

On the other hand, arbitration is a contractual matter, and parties may not be required to submit to arbitration claims which they have not contractually agreed to submit. *AT&T Tech., Inc. v. Communications Workers,* 475 U.S. 643, 648 (1986); *Coors Brewing Co.*, 51 F.3d at 1516. Only claims having "a reasonable factual connection to the contract" are arbitrable. *Id.*

In the present case, Plaintiffs do not dispute that their claims fall within the very broad arbitration clause at issue here. Rather, they dispute the existence of a valid arbitration agreement at all. They argue that Parks College committed massive fraud in terms of affirmative misrepresentations about (1) the Enrollment Agreement and (2) the nature of Parks College generally, and also that Parks College deceptively prevented Plaintiffs from realizing the full import of what it is they were signing.[4] However, the Plaintiffs put forward no evidence or argument that the fraud went to the signing of the agreement to arbitrate as opposed to the Enrollment Agreement as a whole.

"[A] court may compel arbitration of a particular dispute under [the Act] only when satisfied that the 'making' of the agreement to arbitrate is not at issue." *Spahr v. Secco*, 330 F.3d 1266, 1270 (10th Cir. 2003). Prior to proceeding either on the substantive issues in the case or, instead, to compel arbitration, the Court is required to resolve any issues that go to the making of the agreement for

---

[3] The Court agrees with Plaintiffs that the presumption in favor of arbitration "disappears when the parties dispute the existence of a valid arbitration agreement." *Dumais v. American Golf Corp.,* 299 F.3d 1216, 1220 (10th Cir. 2002).

[4] Plaintiffs make various other arguments that do not merit discussion here.

5

arbitration. *Id.* at 1269. An allegation of fraud in the making of the agreement to arbitrate (as opposed to fraud in the inducement of the contract generally) is a matter that the federal courts must adjudicate. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967). "'[I]f the claim is fraud in the inducement of the arbitration clause itself - an issue which goes to the "making" of the agreement to arbitrate - the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally.'" *Spahr*, 330 F.3d at 1271 (quoting *Prima Paint*, 388 U.S. at 404).

### B.     Whether the Parties' Agreement Is Void or Voidable

Here, the Plaintiffs contend that the fraud was not fraud in the inducement, but fraud in the factum. The former renders a contract voidable and, in this instance, would result in a holding that would require the parties to arbitrate their dispute. The latter renders a contract void and would permit Plaintiffs to maintain the present lawsuit. Fraud in the factum requires that the defrauding party make "a misrepresentation as to the character or essential terms of a proposed contract [which] induces conduct that appears to be a manifestation of assent by one who neither knows *nor has reasonable opportunity to know* of the character or essential terms of the proposed contract." RESTATEMENT (SECOND) OF CONTRACTS § 163 (emphasis added) (cited in *Langley v. Federal Dep. Ins. Corp.*, 484 U.S. 86, 93 (1987) and *Castleglen, Inc. v. Resolution Trust Corp.*, 984 F.2d 1571, 1578 (10th Cir. 1993); *see also Langley*, 484 U.S. at 93 ("[Fraud in the factum] is, the sort of fraud that procures a party's signature to an instrument without knowledge of its true nature or contents.").

In the present case, the Plaintiffs have failed to produce anything beyond a conclusory allegation of fraud in the factum. Therefore, the Plaintiffs' contentions are very similar to those in *Adams v. Merrill Lynch, Pierce, Fenner & Smith*, 888 F.2d 696 (10th Cir. 1989):

> Although Investors do not develop their argument regarding the unconscionable nature of the agreement as a whole or of the arbitration clauses specifically, the district court addressed both notions, and correctly concluded:
>
> "Plaintiffs' arguments that the agreements to arbitrate should be voided are unpersuasive. Plaintiffs have made only a conclusory allegation of fraud, and there appears no cogent reason to conclude that defendants have waived their right to arbitrate . . . . Plaintiffs' arguments that the arbitration clause was either not noticed or not explained to them is also unpersuasive. It is generally presumed that one who executes an instrument has read it and understands its contents."

*Id.* at 700-01. In the *Adams* case, as here, the plaintiffs alleged that, although each of the plaintiffs signed an agreement which contained an arbitration clause, the defendant induced the plaintiffs to sign the agreement and did not disclose the arbitration provision. The court responded once more with the principle that "the law presumes that one has read that which he has signed." 888 F.2d at 701 (citing Oklahoma law). *See Cordillera Corp. v. Heard,* 592 P.2d 12 (Colo. App.1978), *aff'd,* 612 P.2d 92 (Colo. 1980) (holding that a party is presumed to know the contents of a contract signed by that party). Each Plaintiff in this case signed both the Enrollment Agreement itself and a separate agreement to arbitrate. Plaintiffs do not allege that Defendants made any misrepresentations about the agreement to arbitrate; in fact, Plaintiffs do not allege that the agreement to arbitrate was a topic of any discussion between the parties. Nor do Plaintiffs allege that the Defendant prevented them from reviewing the Enrollment Agreement, but only that the entire enrollment process was rushed and confusing. In this manner, the facts are materially similar to an illustration from the Restatement (Second) of Contracts, § 163, upon which both the Supreme Court and the Tenth Circuit rely in adjudicating claims of fraud in the factum:

> A and B reach an understanding that they will execute a written contract containing terms on which they have agreed. A prepares a writing containing essential terms that are different from those agreed upon and induces B to sign it by telling him that it contains the terms agreed upon and that it is not necessary for

> him to read it. B's apparent manifestation of assent is effective if B had a reasonable opportunity to read the writing. However, the contract is voidable by B
> . . . .

RESTATEMENT (SECOND) OF CONTRACTS § 163, Illustration 3. Plaintiffs provide no evidence -- other than a conclusory allegation -- that they were prevented from a reasonable *opportunity* to read the Enrollment Agreement. Thus, at worst, the Enrollment Agreement is a voidable, but not void, contract, as is also the agreement to arbitrate. And the arbitrator has jurisdiction to resolve any issues concerning a voidable contract, but the federal courts do not.

Based on the foregoing, this Court finds that there is no genuine issue of material fact concerning the formation of an agreement to arbitrate, and as a matter of law, the parties entered into an arbitration agreement that is sufficiently broad to encompass the claims made by the Plaintiffs here. *See, e.g.*, *Johnson v. Lynn Hickey Dodge Inc.*, 166 F.3d 347 (Table), 1998 WL 826829 at *3 (10th Cir. Dec. 1, 1998) ("We conclude that [Plaintiff's] claims that the arbitration clause was not explained to him and that he did not intend to be bound by the arbitration clause are without merit. Therefore, there is no genuine issue of material fact regarding the parties' agreement to arbitrate, and a jury trial on the issue was not warranted."); *see also Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1283 (10th Cir. 1997).

### C.   **Fairness of the Arbitration Procedure**

To the extent that Plaintiffs argue that forcing them to go to arbitration will result in an unfair process, the Court is compelled to point out several things. First, Plaintiffs are entitled to a fundamentally fair hearing, a requirement which the federal courts will enforce if appropriate. *Bowles Fin. Group, Inc. v. Stifel, Nicolaus & Co.*, 22 F.3d 1010, 1012-13 (10th Cir. 1994). Further, the

courts have found nothing inherently unfair about arbitration clauses, which are uniformly held to be valid and enforceable. *E.g., Adams*, 888 F.2d at 700.

### D.     The Appropriate Remedy

When the parties have entered into an arbitration agreement, and either party requests a stay of the case pending arbitration, the Court must stay the case. 9 U.S.C. § 3. Here, neither party has requested a stay. Defendant has requested dismissal as its sole prayer for relief, and Plaintiffs have made no request for a stay. Although, as a docket entry (whose title is controlled by the party submitting the document for electronic filing), Plaintiffs' opposition to the motion to compel arbitration and dismiss this action is titled "Counter MOTION to Stay *Proceedings in the United States District Court of Colorado*" (emphasis in original),[5] the title on the actual document filed by the Plaintiffs is "Motion In Opposition To Defendant's Motion To Compel Arbitration And Incorporated Memorandum Of Law." The prayer in Plaintiffs "Motion In Opposition" states:

> WHEREFORE, the Plaintiffs respectfully request that this Court deny an order compelling Plaintiffs to arbitrate their claims before the American Arbitration Association staying this Court proceeding in the United States District Court for the District of Colorado.

The only logical reading of Plaintiffs' response is that it opposes an order staying this case and compelling arbitration. It is clear that Plaintiffs wish to proceed to litigate this action and oppose any stay. Plaintiffs make no alternative request for relief. Furthermore, the last substantive paragraph in Defendant's motion addresses whether dismissal is appropriate, and Plaintiffs failed to address this

---

[5]Indeed, the Court's CM/EFC system has characterized Plaintiffs' response as a separately pending motion (Docket #26), although Plaintiffs' response was subsequently re-docketed at Docket #29. Therefore, this Court recommends that the District Judge also deny Docket #26, because it is not, in reality, a motion.

9

argument.

In such a situation, where neither party has requested a stay, and a broad arbitration clause covers any potential dispute between the parties, dismissal is appropriate. *E.g., Armijo v. Prudential Ins. Co. of America*, 72 F.3d 793, 797 (10th Cir. 1995). *See also Amold v. Arnold Corp.,* 920 F.2d 1269, 1276 (6th Cir. 1990) (a district court may dismiss an action, subject to reinstatement, if all of the causes of action alleged in the complaint are subject to arbitration). Moreover, having found that the parties have a binding agreement to arbitrate, and neither party having requested a stay, it is appropriate to enforce the parties' express intent that "any suit filed in violation of this Agreement shall be dismissed by the court in favor of an arbitration."

## III.    Conclusion

Based upon the foregoing, and the entire record herein, it is **recommended** that Defendant's Motion to Compel Arbitration [Filed April 26, 2006; Docket #18] be **granted** and Plaintiff's Counter Motion to Stay [Filed May 19, 2006; Docket #26] be **denied**. It is further **recommended** that this Court enter an order compelling the Plaintiffs to arbitrate their claims before the American Arbitration Association and dismissing this lawsuit in its entirety, without prejudice.

Dated at Denver, Colorado, this 23rd day of June, 2006.

BY THE COURT:

 s/ Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge